IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NICHOLAS LAUDATO,**                      Case 1:15 CV 1143

    Plaintiff,                           Judge Donald C. Nugent

    v.                                 Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                    REPORT AND RECOMENDATION

### INTRODUCTION

Plaintiff Nicholas Laudato ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated June 8, 2015). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed and remanded in part, and affirmed in part.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB on April 25, 2012, alleging a disability onset date of December 13, 2010. (Tr. 160). Plaintiff applied for benefits due to bulging discs, bilateral chondramalacia patellae, bilateral bursitis in his hips, arthritis in his right foot, left shoulder arthritis and bursitis, and severe depression. (Tr. 78). His claim was denied initially (Tr. 78-89) and upon reconsideration (Tr. 90-103). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 116). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a

hearing before the ALJ on December 10, 2013, after which the ALJ found Plaintiff not disabled. (Tr. 30-45, 46-77). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on June 8, 2015. (Doc. 1).

## FACTUAL BACKGROUND

*Personal Background and Testimony*

Plaintiff was born on December 30, 1965, and was 47 years old at the time of the hearing. (Tr. 49). He lived in a house with his girlfriend and son, had a driver's license, and had completed high school. (Tr. 50). Plaintiff was honorably discharged from the U.S. Marine Corps for bilateral chondromalacia patella and had past work as a labor foreman. (Tr. 51). He testified he stopped working in 2010 because the pain was too severe but he took a voluntary layoff. (Tr. 53).

Plaintiff stated his hip pain was constantly at a seven on a scale of one to ten and was a nagging, burning pain. (Tr. 54, 65). He elaborated that his back pain caused shooting pain down into his legs. (Tr. 64, 213). He stated he had discontinued taking prescription medication because it was ineffective and caused side effects. (Tr. 55-56). Plaintiff had also tried acupuncture but it was unsuccessful. (Tr. 57). Plaintiff reported he was unable to do physical therapy and did not utilize a TENS unit, but he did wear back and knee braces. (Tr. 57). He stated lying down and icing his back relieved the pain, as well as elevating his legs, but it offered only minimal relief. (Tr. 58). Plaintiff also testified to chronic fatigue, particularly affecting his left side. (Tr. 66-67).

He estimated he could walk for five minutes, stand or sit for 10-15 minutes, and was unable to bend, stoop, or squat. (Tr. 58-59). Plaintiff also stated he was able to take care of his

personal hygiene, albeit slowly, but could not do any household chores. (Tr. 61-62, 213-14). He stated he occasionally attended church and periodically visited his parents. (Tr. 63).

*Relevant Medical Evidence*

Plaintiff saw Mark Panigutti, M.D., for hip pain from January 2009 until January 2010. (Tr. 245-48). Dr. Panigutti remarked Plaintiff had mild limitations in range of motion, no hip pain, mildly shallow hip sockets, and minimal degenerative changes. (Tr. 245, 248). Dr. Panigutti noted greater trochanteric bursitis and degenerative disc disease at L5-S1. (Tr. 247).

On January 19, 2010, Plaintiff established care with Dr. Timothy Bohn, where he reported knee, back, and ankle pain. (Tr. 325-26). Dr. Bohn also noted hemochromatosis in the past medical history section. (Tr. 326). On examination, Dr. Bohn noted no edema in the extremities, normal spinal range of motion, intact muscle strength, and normal gait. (Tr. 326-27). A few months later, Plaintiff reported ongoing back pain but did not request narcotic pain medication. (Tr. 318). Dr. Bohn gave Plaintiff a trial pack of Tramadol. (Tr. 318).

On August 1, 2011, Plaintiff visited the emergency room for complaints of shortness of breath and chest pain. (Tr. 252). On examination, he had normal strength and muscle tone, full range of motion in all extremities, no musculoskeletal tenderness, and no swelling. (Tr. 253). On August 2, 2011, Dr. Ted Mathew from the emergency room noted Plaintiff's reports of significant fatigue and a history of hemochromatosis, but this diagnosis was not confirmed. (Tr. 284).

On September 20, 2011, Plaintiff reported lumbar spine pain, hip pain with exertion, and pain radiating into both legs; Dr. Bohn remarked "some findings [ ] suggest pseudo-claudication." (Tr. 304). On examination, Dr. Bohn noted paraspinal spasm and tightness of the left paraspinal muscles but none on the right side. (Tr. 304). Straight leg raise tests generated

3

discomfort into the buttocks and knee but Plaintiff's gait was normal. (Tr. 304). Plaintiff reported that an exercise and strengthening program for his back was unsuccessful at relieving his pain and may have increased it. Dr. Bohn ordered a MRI of the lumbar spine. (Tr. 304). The MRI revealed "minimal dis[c] space narrowing at L5-S1"; no significant foraminal stenosis from T12-L4; but disc bulging at L4-L5 and L5-S1; no significant central canal and foraminal narrowing at L4-L5; severe left and moderate right foraminal stenosis at L5-S1; and degenerative changes to the sacroiliac joint. (Tr. 307).

Plaintiff visited Dr. Santhosh Thomas on January 11, 2012, with complaints of lower back pain radiating into his legs. (Tr. 338). Physical examination revealed "no significant antalgic gait"; ability to demonstrate heel/toe stand and walk smoothly; no muscle weakness in hip, knee, or back; mildly limited lumbar range of motion; bending within functional limits; normal range of motion in the hip, knee, and ankle; no muscle atrophy; and no pain on palpation of the lumbar region, sacroiliac joints, or greater trochanter bilaterally. (Tr. 338). Dr. Thomas suggested physical therapy, and prescribed Medrol and Neurontin because Plaintiff wished to continue with non-surgical options. (Tr. 339-40).

For approximately six weeks in early 2012, Plaintiff tried acupuncture once a week to relieve his lower back pain; it was reportedly successful. (Tr. 345). On February 14, 2012, Plaintiff returned to Dr. Bohn where his chief complaint was hyperlipidemia and he reported no joint, back, or muscle pain, and no swelling. (Tr. 365). On physical examination, Dr. Bohn noted no pain to palpation in the back, no extremity edema, normal spinal range of motion, normal muscle strength, and normal gait. (Tr. 365). Dr. Bohn did remark that Plaintiff's most recent hemoglobin level was elevated. (Tr. 366, 370).

In April 2012, Plaintiff presented to Dr. Bohn with knee and right ankle/foot pain. (Tr. 371). Dr. Bohn noted significant crepitation in the ankle but noted no redness, warmth, or swelling in either the knees or ankles. (Tr. 371). Dr. Bohn remarked that Plaintiff's initially antalgic gait improved with walking and ordered a MRI and x-rays of the knees and right ankle. (Tr. 371). X-rays of the knees showed minimal narrowing of the joint compartments and was overall normal. (Tr. 373-74). The MRI of the left knee revealed no evidence of ligament injury, "mild chondral degenerative changes", and a small cyst. (Tr. 375). The right foot x-ray revealed no acute findings. (Tr. 375).

In June 2013, Plaintiff saw Wayne Forda, M.D.; on examination he had no edema, full range of motion in his knees, and no crepitus. (Tr. 410-11). Although there is no mention of hemochromatosis as a past condition, Plaintiff's hemoglobin level was elevated. (Tr. 417). In October 2013, Plaintiff underwent genetic testing for hemochromatosis. (Tr. 422-23). The tests revealed he had heterozygous hemochromatosis, characterized by H63D gene[1]. (Tr. 422-23).

Plaintiff included in the record to this Court additional evidence from 2014 which was after the date of the ALJ hearing and decision; and thus, was not considered by the ALJ. This Court cannot consider evidence that was not before the ALJ in evaluating substantial evidence. *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). This new evidence may only be considered in the context of a sentence six remand. *Id.* Plaintiff did not request a sentence six remand and has thus, waived the issue. *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149, 151 (6th Cir. 1990).  Therefore, the evidence in the record post-dating the ALJ's decision is not summarized herein.

---

1. Individuals with the H63D heterozygote are at a low risk for developing hemochromatosis and are unlikely to have symptoms of iron overload. GENETICS – HEMOCHROMATOSIS: IRON DISORDERS INSTITUTE, http://www.hemochromatosis.org/genetics/ (last visited May 5, 2016).

*Consultative Examiner*

On July 5, 2012, Plaintiff underwent a consultative examination with Kourosh Saghafi, D.O. (Tr. 397-404). Dr. Saghafi noted no pain in the joints, no muscle atrophy, or flexion contractures; but did observe muscle spasms of the left paraspinal muscles. (Tr. 398, 402). Dr. Saghafi also observed normal gait and remarked Plaintiff did not need an ambulatory aid. (Tr. 399). Based on manual muscle testing, Dr. Saghafi noted crepitus in both knees, reduced (but still normal) strength in both hips and knees, reduced dorsolumbar range of motion, and reduced range of motion in both hips and knees. (Tr. 399, 401-04).

Overall, Dr. Saghafi opined Plaintiff was able to sit for eight hours, stand/walk for four hours a day, and did not need an ambulatory aid. (Tr. 400). He further opined Plaintiff could frequently carry ten pounds, occasionally carry twenty pounds, could push/pull/manipulate without limitation, and was capable of climbing stairs. (Tr. 400).

*State Agency Reviewers*

State agency reviewer, Dr. Teresita Cruz found Plaintiff was capable of occasionally lifting or carrying twenty pounds; frequently lifting or carrying ten pounds; standing or walking for four hours; sitting for six hours; occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, and crawling; and had no manipulative or environmental limitations. (Tr. 85-86). She opined that while Plaintiff was not capable of performing heavy labor, he was capable of sedentary work. (Tr. 87-88).

On reconsideration, Dr. Maureen Gallagher opined Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk for six hours; sit for more than six hours; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop; frequently kneel, crouch, or crawl; and had no manipulative or environmental

limitations. (Tr. 97-98). Dr. Gallagher opined Plaintiff was capable of sedentary work. (Tr. 99-100).

*ALJ Decision*

In December 2013, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and degenerative arthritis of the hips and knees; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 35-37). The ALJ then found Plaintiff had the RFC to perform light work except that he could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs; and could occasionally balance, stoop, kneel, crouch, or crawl. (Tr. 37). Based on the VE testimony, the ALJ found Plaintiff could perform light work as a cashier, sales attendant, or housekeeper; or in the alternative, could perform sedentary work as a food and beverage order clerk or bench assembler. (Tr. 40-41).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court

cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

8

meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) his Step Two analysis did not include a finding of severe impairments for hemochromatosis and pseudoclaudication; (2) he failed to properly analyze Listing 1.04(C); (3) he failed to consider the effect of Plaintiff's medication; (4) he failed to consider all of Plaintiff's impairments and symptoms in formulating the RFC; and (5) the RFC was inconsistent with the opinion evidence, and ultimately, unsupported by substantial evidence. (Doc. 10, at 11-21).

### *Step Two – Severe Impairments*

Plaintiff argues the ALJ erred by not including Plaintiff's hemochromatosis and pseudoclaudication as among his severe impairments. However, because the ALJ found Plaintiff suffered from other severe impairments, it was irrelevant whether he considered Plaintiff's hemochromatosis and pseudoclaudication severe. 20 C.F.R. § 416.920(c) (relevant inquiry at step two is whether "you do not have *any*" severe impairments (emphasis added)); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009).

The regulations do not require the ALJ to designate each impairment as "severe" or "non-severe"; rather, the determination at step two is merely a threshold inquiry. 20 C.F.R. § 404.1520(a)(4)(ii). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 WL 374184, at *5). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider all the limitations caused by the claimant's

impairments, severe or not. And when an ALJ considers all a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Thus, the ALJ's initial failure to designate hemochromatosis and pseudoclaudication as severe is not reversible error. However, the Court must determine whether the ALJ considered the effects these conditions could have on Plaintiff's ability to work in the remainder of his disability evaluation. Plaintiff was never diagnosed with pseudoclaudication; at most, Dr. Bohn suggested pseudoclaudication could be the cause of his back pain but this was never confirmed. (Tr. 304). Further, the ALJ did summarize the degenerative changes in Plaintiff's back and his complaints of back pain radiating into his lower extremities throughout the opinion. (Tr. 35-39). Thus, the ALJ did not err by failing to designate pseudoclaudication as a severe impairment because he acknowledged the related symptoms in formulating the RFC.

However, Plaintiff's hemochromatosis went completely unacknowledged by the ALJ despite the fact there was a positive diagnosis of the condition and evidence of elevated hemoglobin levels in the record. (Tr. 326, 366, 370, 417, 422-23). Further, Plaintiff testified to chronic fatigue and reported similar complaints to a physician. (Tr. 66-67, 284). Common symptoms of hemochromatosis are joint pain, abdominal pain, fatigue, and weakness.[2] While ultimately, the severity of Plaintiff's condition and the effect it has on his ability to work is undetermined, and possibly negligible, the ALJ was required to consider the effects this diagnosed condition could have on Plaintiff's RFC. *See Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 190-91 (6th Cir. 2009). Thus, because the ALJ did not discuss any evidence or

---

2. MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/hemochromatosis/symptoms-causes/dxc-20167290 (last visited May 9, 2015).

symptoms related to Plaintiff's hemochromatosis in the remainder of the opinion; his failure to designate it as a severe impairment (as diagnosed by an acceptable medical source) is reversible error.

*Listing 1.04(C)*

In his next assignment of error, Plaintiff alleges the ALJ failed to provide a meaningful discussion of the evidence supporting his decision that Plaintiff did not meet Listing 1.04(C). (Doc. 10, at 18-20). While there is no "heightened articulation standard" in considering the listing of impairments, a reviewing court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)); *see also May*, 2011 WL 3490186, at *7 ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision."). Yet, a court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis. *Snoke*, 2012 WL 568986, at *6 (citing *Bledsoe*, 165 F. App'x at 411).

To meet Listing 1.04(C) a claimant must have a disorder of the spine, "resulting in a compromise of a nerve root or spinal cord. With [ ] lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(C). An inability to ambulate effectively is defined as "an extreme limitation in the ability to walk," characterized by "having insufficient lower extremity functioning…to permit independent ambulation without the use of a hand-held device that limits the functioning of both upper extremities." *Id.* at § 1.00(B)(2)(b).

11

Here, the ALJ's discussion of the medical evidence as it relates to Listing 1.04(C) occurred later in his opinion as opposed to under the Step Three heading. (*See* Tr. 37-39). As stated above, there was never a definite diagnosis of pseudoclaudication. Further, there is ample evidence in the medical record (and as discussed by the ALJ) that establishes Plaintiff had a normal gait and could ambulate adequately. (Tr. 304, 326-27, 338, 365, 371). In fact, the consultative examiner explicitly stated Plaintiff did not require an assistive device and Plaintiff has never claimed he needed one. (Tr. 399). All of these factors necessitate a finding that Plaintiff did not meet Listing 1.04(C). *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming an ALJ's determination that plaintiff did not meet listing when evidence "almost establishes disability".). In this case, "concrete factual and medical evidence" that was "apparent in the record" supported the ALJ's determination that Plaintiff did not meet the listing requirements despite his failure to discuss this evidence under the Step Three heading. *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 656-57 (6th Cir. 2009).

*Credibility*

Next, Plaintiff argues the ALJ's credibility determination was flawed because he failed to evaluate the side effects of Plaintiff's medications. (Doc. 10, at 17-18). When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1.

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: (1) objective medical evidence of an underlying medical condition; or (2) objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs*, 801 F.2d 847, 853 (6th Cir. 1986).

> In evaluating credibility of Plaintiff's complaints an ALJ considers certain factors:
>
> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is

13

appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ summarized the available evidence and concluded the evidence did not fully support Plaintiff's claims of disabling pain because objective tests showed mainly minimal abnormalities, Plaintiff's treatment efforts were not extensive, and he consistently had normal gait upon physical examination. (Tr. 39). As part of larger disapprobation regarding Plaintiff's treatment efforts, the ALJ noted the lack of prescription medication was inconsistent with Plaintiff's pain complaints. (Tr. 39, 318, 364, 409). And specifically, the ALJ noted that Plaintiff complained of negative side effects, disequilibrium, caused by Neurontin but this was his only medication complaint. (Tr. 38). Plaintiff argues that throughout his treatment history he received prescription medication, including Tramadol, Mobic, and Neurontin, but they were all ultimately ineffective at controlling his pain.[3] (Doc. 10, at 18; Tr. 55-57). Overall, the ALJ appropriately discussed the role of medication in evaluating Plaintiff's credibility; he addressed the side effects of Neurontin (the only drug complained about) and concurrently, addressed that throughout much of the medical record Plaintiff was not taking (or even seeking) pain medication. (Tr. 55-57, 318, 364, 409).

The Court is limited to determining whether the ALJ applied the appropriate standard to his credibility assessment and cannot re-weigh the evidence. *Cruse*, 502 F.3d at 542. It is

---

3. Plaintiff also includes citation to evidence that was submitted after the hearing decision and thus, is not analyzed herein. *Supra* pg. 5.

certainly true that Plaintiff can construe these facts in a different light; however, that does not undermine the ALJ's citation to relevant evidence in making a credibility determination. *See Jones,* 336 F.3d at 477. From a review of the opinion and the record, the ALJ had substantial evidence to support his conclusion that Plaintiff was not wholly credible.

*RFC*

Plaintiff makes a variety of challenges to the ALJ's RFC finding; however, the undersigned will not address these arguments at this time because remand is required to evaluate the effect of Plaintiff's hemochromatosis, in combination with his other impairments, on his ability to work. Thus, it is conceivable Plaintiff's RFC will be affected by this additional condition and a determination into the substantial evidence supporting the RFC, as it currently stands, would be moot.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned recommends the Commissioner's decision be reversed and remanded in part, and affirmed in part.

        s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).